UNITED STATES DISTRICT COURT **13 CV 0646**
SOUTHERN DISTRICT OF NEW YORK

LAURIE SCOTT, individually and on behalf
of all others similarly situated,

                              Plaintiff,

          v.

JPMORGAN CHASE & CO., JPMORGAN
CHASE BANK, N.A., and CHASE BANK
USA, N.A.,

                              Defendants.

Civil Action No. _____

**CLASS ACTION COMPLAINT**

Plaintiff Laurie Scott, by her attorneys, makes the following allegations pursuant to the

investigations of counsel and upon information and belief, except as to the allegations specifically

pertaining to her, which are based on personal knowledge:

## NATURE OF THE ACTION

1.      This is a class action against JPMorgan Chase & Co. ("JPMC"), JPMorgan Chase

Bank, N.A. ("JPMCB"), and Chase Bank USA, N.A. ("CBUSA") (collectively, "Chase" or

"Defendants") for unilaterally enrolling customers into its Overdraft Protection service and

charging unauthorized and unconscionable fees and charges associated with that service in

breach of its Deposit Account Agreement and funding account agreements.

2.      Pursuant to Chase's Overdraft Protection service, if a customer makes out a check

or initiates a withdrawal or other transaction that is drawn on his or her JPMCB checking

account in an amount greater than the current checking account balance, then JPMCB will

initiate a transfer of money from a specified funding account to the checking account in $50.00

increments to cover the shortfall (an "ODP Transfer").  For personal accounts, the specified

funding account may be a personal savings account with JPMCB, a credit card account with

CBUSA, a home equity line of credit with JPMCB, or a prestige line of credit with JPMCB.  For

each day on which an ODP Transfer occurs, JPMCB charges a $10.00 transfer fee ("Transfer

Fee") for each checking account that receives a transfer.  In addition, if the funding account is

not a savings account, then JPMCB or CBUSA (as the case may be) levies overdraft interest

charges ("Overdraft Interest Charges") against the funding account every month per the

customer's funding account agreement.

3.      The terms of Chase's Overdraft Protection service appear in JPMCB's Deposit

Account Agreement.  Those terms are incomplete, deceptive, and misleading to reasonable

consumers for the reasons stated herein—not least of which, is JPMCB's failure to expressly

disclose in its Deposit Account Agreement the amount of the Transfer Fees.  Moreover, Chase's

funding agreements are incomplete, false, and misleading because they fail to accurately disclose

the total cost of borrowing for overdraft advances.  For example, if the funding account is a

credit card account, the Cardmember Agreement states an Overdraft Advance APR that fails to

account for the transaction fees associated with ODP Transfers, such as the Transfer Fees

charged to the customer's linked checking account.

4.      Overdraft Protection service revenues are a significant profit center for Chase,

which earned $3.2 billion in 2011 from lending and deposit related fees, including from

overdrafts.

5.      JPMCB's Deposit Account Agreement states that account holders "must

separately sign up for Overdraft Protection as it does not automatically apply to new accounts.

... 'Overdraft Protection' means the automated funds transfer service established pursuant to the

[r]equest and this section." However, Plaintiff Scott did not sign up for Chase's Overdraft Protection service. Instead, Chase unilaterally enrolled Plaintiff Scott in Overdraft Protection for her new personal checking account without her authorization. Moreover, Chase designated Plaintiff Scott's CBUSA consumer credit card account as the funding account for her Overdraft Protection service without her authorization.

6.      On February 3, 2010, Plaintiff Scott's checking account was overdrawn by $95.15. As a result of Defendants' fraudulent conduct, Plaintiff Scott was hit with a costly triple-whammy: a one-time $10.00 Transfer Fee by JPMCB, a one-time $150.00 ODP Transfer charge on her credit card by CBUSA, and monthly Overdraft Interest Charges by CBUSA, which amounted to $1.08 in February 2010 and continued to be assessed monthly until or about September 2012 when Plaintiff Scott paid the balance on her credit card account in full.

7.      Thereafter, on September 15, 2010, Plaintiff Scott's checking account was overdrawn by $0.26. As a result of Defendants' fraudulent conduct, CBUSA levied a one-time $50.00 ODP Transfer charge on her credit card and monthly Overdraft Interest Charges, which amounted to $4.35 in September 2010 and continued to be assessed monthly until in or about September 2012, when Plaintiff Scott paid the balance on her credit card account in full.

8.      Through this lawsuit, Plaintiff seeks to recover, for herself and all others similarly situated, a full refund of these unauthorized, unconscionable, and misleading fees and charges, and injunctive relief to enjoin the continuing illegal business practices alleged herein.

## THE PARTIES

9.      Plaintiff Laurie Scott is a citizen of California, residing in Petaluma, California.

10.     Defendant JPMorgan Chase & Co. ("JPMC") is a Bank Holding Company with its principal place of business at 270 Park Avenue, New York, NY 10017. JPMC is the nation's largest Bank Holding Company, with over $2.26 trillion in assets as of Q4 2011.

11.     Defendant JPMorgan Chase Bank, N.A. ("JPMCB") is a federally chartered bank with its principal place of business at 1111 Polaris Parkway, Columbus, Ohio 43240.  Chase Bank is an FDIC-insured subsidiary of JPMC that specializes in retail banking.

12.     Defendant Chase Bank USA, N.A. ("CBUSA") is a federally chartered bank with its principal place of business at 200 White Clay Center Drive, Newark, Delaware 19711.  Chase Bank USA is an FDIC-insured subsidiary of JPMC that specializes in credit card services.

13.     At all relevant times, JPMC, JPMCB, and CBUSA acted in concert with, with the knowledge and approval of and/or as the agent of each other, and within the course and scope of the agency, regarding the acts and omissions alleged.

14.     At all relevant times, JPMC exercised such dominion and control over its subsidiaries JPMCB and CBUSA that it is liable for the acts of those subsidiaries under the facts alleged herein.

15.     Moreover, at all relevant times hereto, Defendants affirmatively participated in and/or adopted Chase's Overdraft Protection service.  Among other things, JPMC, JPMCB, and CBUSA are each responsible for (1) formulating and implementing the Overdraft Protection service, (2) utilizing deceptive and misleading advertising, promotional and informational materials in connection with the Overdraft Protection service, (3) enrolling customers in Overdraft Protection without their authorization in breach of the Deposit Account Agreement, and (4) charging unauthorized, unconscionable and misleading fees and charges associated with the Overdraft Protection service in breach of the Deposit Account Agreement and funding account agreements.

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question). This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

17.    This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendants.

18.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because JPMC has its principal place of business in this district, Defendants do business throughout this district, a substantial part of the events giving rise to Plaintiff Scott's claims took place within this judicial district, and witnesses and documents are likely to be found in this district.

## FACTS COMMON TO ALL COUNTS

### *Characteristics Of Overdraft Programs*

19.    Overdraft programs are well-studied, given their high fees and potential for abuse. In 2008, the Federal Deposit Insurance Corporation completed a comprehensive investigation of overdraft programs. *See Study of Bank Overdraft Programs*, Nov. 2008, *available at* http://www.fdic.gov/bank/analytical/overdraft/ (last visited Jan. 16, 2013) ("FDIC Study"). Additionally, in May 2008, the Pew Center on the States completed a survey of consumers, drawn from a nationally representative sample of 6,043 respondents. *See Overdraft America: Confusion and Concerns about Bank Practices*, May 2012, *available at* http://www.pewtrusts.org/news_room_detail.aspx?id=85899384415 (last visited Jan. 16, 2013) ("Pew Study").

20.    <u>Overdraft programs are widespread</u>.  Eighteen percent of consumers overdrafted an account in 2011.  Pew Study at 2.  Over ninety-nine percent of banks that operate an overdraft program charge overdraft fees.  FDIC Study at 13.

21.    <u>The vast majority of overdrafts occur unintentionally</u>.  *Ninety percent* of consumers said they overdrew an account by mistake.  Pew Study at 4.  In comparison, only 7% of consumers said they overdrew an account intentionally.  *Id.*

22.    <u>Overdraft programs are overwhelmingly unpopular</u>.  Seventy-five percent of overdrafters said they would prefer that an overdraft transaction be declined rather than have it processed.  Pew Study at 5.  Thirty-five percent of overdrafters reported closing a checking account due to overdraft fees.  *Id.* at 7.  Richard Cordray, Directory of the Consumer Financial Protection Bureau ("CFPB"), warned that "the growing costs of overdraft practices have the capacity to inflict serious economic harm."  Prepared Remarks by Richard Cordray at the CFPB Roundtable on Overdraft Practices (Feb. 22, 2012), *available at* http://www.consumerfinance.gov/speeches/prepared-remarks-by-richard-cordray-at-the-cfpb-roundtable-on-overdraft-practices/ (last visited Jan. 16, 2013) ("Cordray Speech").

23.    <u>Overdraft fees are a significant profit center for retail banks</u>.  In 2011, bank customers nationwide paid $31.6 billion in overdraft fees.  And Overdraft Protection service revenues are a significant profit center for Chase, who earned $3.2 billion in 2011 from lending and deposit related fees, including from overdrafts.  Carter Dougherty & Margaret Collins, *Nine U.S. Banks Said to be Examined on Overdraft Fees*, BLOOMBERG, Apr. 20, 2012, http://www.bloomberg.com/news/2012-04-20/nine-u-s-banks-said-to-be-examined-on-overdraft-fees.html (last visited Jan. 16, 2013) ("Dougherty Article").

24.    <u>Banks consistently fail to warn about an overdraft until *after* they levy fees</u>.  The most common way that consumers are notified about an overdraft is by an account statement. Pew Study at 7.  The Pew Study found that "it could be days or weeks before a consumer receives this notification, potentially leading to compounded overdraft fees." *Id.*  The FDIC found that 88.8% of banks notified consumers only after a transaction was completed for point-of-sale debit transactions, compared to 70.7% for ATM transactions.  FDIC study at iii.  The CFPB warns that "consumers may engage in numerous transactions and pile up multiple overdraft charges before realizing what has happened and how much damage has been done." Cordray Speech.

25.    <u>Overdraft programs have an extremely high Annual Percentage Rate ("APR")</u>. The FDIC found that given a $27 overdraft fee (the survey median), a customer repaying a $20 point-of-sale debit overdraft in two weeks would incur an APR of 3,520%, and a consumer repaying a $60 ATM overdraft in two weeks would incur an APR of 1,173%.  FDIC Study at v.

26.    <u>Moreover, most consumers do not know whether they opted-in to an overdraft program</u>.  The Pew Study found that fifty-four percent of overdrafters did not believe they opted-in for overdraft coverage. Pew Study at 4.  However, opting in is such a substantial source of confusion that there is substantial disagreement among survey groups.  For example, Moebs estimates that 77% of bank customers have opted-in, while the Consumer Bankers Association concluded that the rate is 17%.  Dougherty Article.  Meanwhile, the Center for Responsible Lending estimates the opt-in rate is 33%.  *Id.*

27.    <u>In addition, consumers frequently misconstrue the notion of opting out</u>.  A Pew focus group from 2011 reveals that consumers frequently misunderstand the effect of opting out of overdraft protection.  Susan Weinstock, director of the Safe Checking in the Electronic Age

Project at Pew Charitable Trusts, reports that, "We did focus groups where people said, 'I opted in [to Overdraft Protection] so I won't have to pay the overdraft fee.'" Dougherty Article. Similarly, the CFPB found that, "Many of the consumers we heard from did not realize [overdrafts] could happen – despite the opt-in requirement that is supposed to provide them with the means of protecting their own interests. They may have been misled by marketing materials that suggested opting in to overdraft protection was necessary if they wanted to continue to use their debit card. Or maybe they saw one-sided advertising that emphasized the benefits of overdraft while burying information about the costs." Cordray Speech.

### *Chase's Deposit Account Agreement*

28.    The terms of JPMCB's checking accounts are contained in its Deposit Account Agreement. The Deposit Account Agreement is a standardized account holder agreement which is drafted by JPMCB and presented to its customers on a "take it or leave it" basis. The Deposit Account Agreement is a contract of adhesion.

29.    JPMCB's Deposit Account Agreement provides, "You must separately sign up for Overdraft Protection as it does not automatically apply to new accounts. … 'Overdraft Protection' means the automated funds transfer service established pursuant to the [r]equest and this section." The Deposit Account Agreement continues, "To help prevent Insufficient Funds and Return Item fees, talk to a banker to sign up for Overdraft Protection."

30.    The Deposit Account Agreement also provides, "Overdraft Protection Transfer fees may apply and will be deducted from your checking account." However, the Deposit Account Agreement does not disclose the *amount* of the Transfer Fee.

### Chase's Overdraft Protection Service

31.    An overdraft occurs when a customer draws on a checking account in an amount that is greater than the current balance of that account. This causes the account balance to become negative. For example, if a consumer deducts $107.43 from an account with a balance of $66.81, the transaction will leave him overdrawn with a negative balance of $40.62. In the absence of overdraft protection, such a transaction would be declined.

32.    Under Chase's Overdraft Protection service, instead of declining a transaction that creates an overdraft, JPMCB or CBUSA will transfer the shortfall from the customer's funding account in increments of $50, thereby allowing the overdraft transaction to be processed. For example, if a consumer draws $107.43 from a checking account with a balance of $66.81, the transaction *would* leave him with a negative balance of $40.62. If the customer's funding account is a credit card account, CBUSA will charge $50.00 to the credit card and deposit that $50.00 into the checking account via an ODP Transfer, leaving the customer with a positive checking account balance of $9.38.

33.    Chase calls its program "Overdraft Protection." This is misleading. Chase's Overdraft Protection service does *not* protect or warn consumers on a transaction-by-transaction basis about initiating transactions that will create overdraft charges, and it does not protect consumers from overdraft fees and charges. To the contrary, through its Overdraft Protection service Chase charges billions of dollars of Transfer Fees and Overdraft Interest Charges per annum.

34.    Moreover, Chase charges unconscionably high and misleading fees and interest for its Overdraft Protection service. When a customer with Overdraft Protection overdraws his or her checking account, Chase charges the customer three different ways: (1) a Transfer Fee of

$10.00, (2) an ODP Transfer charge to the customer's funding account in $50 increments, and (3) Overdraft Interest Charges.

35.     Furthermore, CBUSA's Overdraft Interest Charges carry a higher APR than its standard Purchase APR.

36.     The Transfer Fees and Overdraft Interest Charges are unconscionable because they result in a stratospheric Effective APR for Chase customers.

37.     Moreover, Chase's funding agreements are incomplete, false, and misleading because they fail to accurately disclose the total cost of borrowing for overdraft advances. For example, if the funding account is a credit card account, the Cardmember Agreement states an Overdraft Advance APR that fails to account for the transaction fees associated with ODP Transfers, such as the Transfer Fees charged to the customer's linked checking account.

38.     The availability of high fees and interest has led Chase to engage in abusive practices. For example, JPMCB's Deposit Account Agreement promises that, "You must separately sign up for Overdraft Protection as it does not automatically apply to new accounts." But Chase has unilaterally enrolled customers, including Plaintiff Scott, in its Overdraft Protection service without their authorization. Doing so allows Chase to charge overdraft-related fees and charges every time a customer has insufficient funds to process a transaction.

39.     Chase's Overdraft Protection service is both substantively and procedurally unconscionable in the following material respects, among others:

    A.     Chase automatically enrolls customers in Overdraft Protection without their authorization, in violation of JPMCB's Deposit Account Agreement.

    B.     Chase does not obtain affirmative consent from customers prior to enrolling them in Overdraft Protection.

    C.     Chase makes no effort and undertakes no investigation to determine if an account holder is properly enrolled in Overdraft Protection prior to levying fees and charges associated with the service.

D.  The written documents that Chase provides to consumers do not provide them with sufficient information to understand the terms and conditions of Overdraft Protection.

E.  JPMCB's Deposit Account Agreement does not disclose the actual amount of the Transfer Fee relating to the Overdraft Protection service.

F.  Chase's funding account agreements fail to accurately disclose the total cost of borrowing for OPD Transfers/overdraft advances.

G.  Chase's Deposit Account Agreement and funding account agreements are contracts of adhesion in that they are standardized forms offered on a "take it or leave it" basis, imposed and drafted by Chase, a party of vastly superior bargaining strength.

H.  Chase's Deposit Account Agreement and funding account agreements are ineffective, ambiguous, incomplete, unfair, false, and misleading with respect to communicating the nature and terms of the Overdraft Protection service, and its related fees and charges.

I.  Chase's Deposit Account Agreement and funding account agreements do not require any affirmative consent by the customer, like a signature.

J.  Chase charges grossly unreasonable fees and charges for Overdraft Protection that shock the conscience. These fees and charges bear no relationship to actual overdraft amounts, and the stated Overdraft APR fails to disclose total finance charges for ODP Transfers/overdraft advances.

K.  The value of Overdraft Protection is not computable or discernible by Chase customers.

L.  Chase does not alert its customers that a transaction will create an overdraft and trigger overdraft fees and charges, and it does not provide customers with an opportunity to cancel such transactions before they are initiated or completed.

40.    These business practices and program characteristics are unconscionable, given the great business acumen and experience of Chase in relation to Plaintiff and the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns.

11

41.     JPMCB's Deposit Account Agreement also contains an arbitration clause and a class action waiver which states:

ANY DISPUTE MUST BE RESOLVED BY BINDING ARBITRATION...
YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER
REPRESENTATIVE ACTION IN COURT, NOR WILL YOU BE ABLE TO
BRING ANY CLAIM IN ARBITRATION AS A CLASS ACTION OR OTHER
REPRESENTATIVE ACTION. YOU WILL NOT BE ABLE TO BE PART OF
ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT
BY ANYONE ELSE, OR TO BE REPRESENTED IN A CLASS ACTION OR
OTHER REPRESENTATIVE ACTION...

If you or the Bank elects to arbitrate a Claim, the arbitration will be conducted as
an individual action. Neither you nor the Bank consents or agrees to any
arbitration on a class or representative basis, and the arbitrator shall have no
authority to proceed with any arbitration on a class or representative basis. This
arbitration provision applies to and includes any Claims made and remedies
sought as part of any class action, private attorney general or other representative
action, which Claims hereby are made subject to arbitration on an individual
(non-class, non-representative) basis. This means that even if a class action
lawsuit or other representative action, such as that in the form of a private
attorney general action, is filed, any Claim between you and the Bank related to
this Agreement raised in such lawsuits will be subject to an individual arbitration
Claim if either you or the Bank so elects.

42.     This arbitration provision is procedurally and substantively unconscionable and

unenforceable in that, *inter alia*, it is a contract of adhesion because, among other reasons, it is a

standardized form, imposed and drafted by JPMCB, which is a party of vastly superior

bargaining strength, and relegates to the depositor only the opportunity to adhere to it or reject it,

and because it leads to overly harsh results for consumers. Even if the arbitration clause could be

enforced according to its terms (which it cannot), doing so would render consumers without a

viable means of vindicating their federal statutory and other rights under the circumstances.

43.     For example, Plaintiff's out-of-pocket damages in this case equal the amount of

the Transfer Fee ($10.00), ODP Transfer charges ($200.00), and monthly Overdraft Interest

Charges. The cost to retain competent counsel to address the merits of this case would be

thousands of times that amount. No competent counsel would represent a plaintiff in an individual arbitration involving the relatively small damages at issue in this case. The cost of representation would be greater than any potential recovery the individual plaintiff might seek. Indeed, the economic reality of the market for legal services is such that the claims asserted in this case, even if meritorious, will not be litigated if they cannot be pursued on a class basis. Even assuming that an individual plaintiff was able to recover his/her actual damages, plus pre-judgment and post-judgment interest, the upfront expenditure of time and money required to litigate the claims and the uncertainty of prevailing would make it difficult if not impossible for a victim to obtain legal counsel on a contingent fee basis or to merit the payment of an hourly fee for such services. Due to the relatively small value of each individual consumer's claim, it would be completely economically unrealistic and impractical for any law firm or attorney to take this sort of case on behalf of only a single individual.

44.    Plaintiff would be unable to obtain competent legal representation to assert an individual claim challenging Chase's common, fraudulent scheme because no competent, private-sector lawyer would agree to undertake such representation.

45.    Due to the complexity of the claims asserted, it would be nearly impossible for an individual consumer to properly or adequately represent his/her own interests in any legal proceeding including small claims court or arbitration. The likelihood that someone could win such claims without the benefit of legal counsel would be very small, particularly where, as here, Chase would be represented by sophisticated legal counsel.

46.    Individual consumers also typically have little knowledge regarding the laws governing consumer transactions and the potential claims and defenses that they may have. Understandably, most consumers are not capable of engaging in the legal research necessary to

bring an action challenging this fraudulent scheme, and even fewer are going to be sufficiently motivated to do so without the potential for class action treatment. Therefore, the arbitration provision in JPMCB's Deposit Account Agreement effectively leaves consumers without a viable means to seek to vindicate their rights and claims and should not be enforced.

47.     Moreover, JPMC and CBUSA are not parties to the Deposit Account Agreement between JPMCB and Plaintiff Scott, so that arbitration provision does not apply to those Defendants. And neither JPMC or CBUSA have entered into any separate arbitration agreements with Plaintiff Scott.

48.     In addition, on November 20, 2009, as part of its settlement in *Ross, et al. v. Bank of America, N.A. (USA), et al.*, No. 05-CV-7116 (S.D.N.Y. July 22, 2010) (entering Final Judgment and Order of Dismissal), JPMC and CBUSA agreed that it "will not seek to enforce an Arbitration Clause or Class Action Waiver Clause against a member of the Settlement Class based on currently existing or pre-existing consumer credit card agreements." Plaintiff Scott is a member of the *Ross* Class, defined as "All Persons holding during the Period in Suit a Credit Card under a United States Cardholder Agreement with any of the Bank Defendants," including JPMC and CBUSA. Because this case involves unauthorized ODP Transfer charges and Overdraft Interest Charges on Plaintiff Scott's Chase credit card, JPMC and CBUSA are estopped from enforcing an arbitration clause or class action waiver arising from their consumer credit card agreements against Plaintiff Scott or any other member of the *Ross* Class.

### *Chase's Overdraft Protection Service Fails To Comply With Best Practices*

49.     On February 18, 2005, the Office of the Comptroller of the Currency, Board of Governors of the Federal Reserve System, Federal Deposit Insurance Corporation, and National Credit Union Administration (collectively, "the Agencies") promulgated best practice guidelines

for retail banks offering overdraft services. *See Joint Guidance on Overdraft Protection Programs*, Feb. 18, 2005, *available at*

http://www.federalreserve.gov/boarddocs/SRLETTERS/2005/SR0503a1.pdf (last visited Jan. 16, 2013) ("Best Practices Guidelines").

50.    In their Best Practices Guidelines, the Agencies explained that, "Clear disclosures and explanations to consumers of the operation, costs, and limitations of an overdraft protection program and appropriate management oversight of the program are fundamental to enabling responsible use of overdraft protection. Such disclosures and oversight can also minimize potential consumer confusion and complaints, foster good customer relations, and reduce credit, legal, and other potential risks to the institution." Best Practices Guidelines at 8.

51.    However, the CFPB found that, "Many of these best practices have not been consistently adopted." *Consumer Financial Protection Bureau Launches Inquiry into Overdraft Practices*, Feb. 22, 2012, CONSUMER FINANCIAL PROTECTION BUREAU,

http://www.consumerfinance.gov/pressreleases/consumer-financial-protection-bureau-launches-inquiry-into-overdraft-practices/ (last visited Jan. 16, 2013).

52.    Chase has not followed the Agencies' Best Practices Guidelines. Chase is deficient in the following ways:

      A.    **"Avoid promoting poor account management.** Institutions should not market the program in a manner that encourages routine or intentional overdrafts." As discussed herein, Chase unilaterally enrolled Plaintiff Scott in Overdraft Protection and charged her overdraft fees and charges without her authorization or prior notification.

      B.    **"Train staff to explain program features and other choices."** Chase did not clearly, conspicuously and completely explain the terms of its Overdraft Protection service to Plaintiff Scott in its customer agreements and other informational materials.

      C.    **"Demonstrate when multiple fees will be charged."** JPMC's Deposit Account Agreement does not expressly alert customers about the

Overdraft Interest Charges, which are separate and distinct from the Transfer Fees.

D.    **"Illustrate the type of transactions covered."** JPMCB's Deposit Account Agreement fails to specify which transactions may result in an overdraft fee, such as ATM withdrawals, debit card transactions, preauthorized automatic debits, or telephone-initiated transfers. Consumers are left to guess which transactions will result in overdraft charges.

E.    **"Provide election or opt-out of service."** JPMCB's Deposit Account Agreement claims that Overdraft Protection is an opt-in service. But Chase unilaterally enrolls customers into Overdraft Protection without their authorization.

F.    **"Alert consumers before a transaction triggers any fees."** Chase's Overdraft Protection service does not warn consumers in advance that a particular transaction will result in an overdraft. Instead, the transaction is processed, and overdraft fees and charges are levied against one's accounts without any advance notice to the customer.

G.    **"Promptly notify consumers of overdraft protection program usage each time used."** Chase does not promptly notify consumers each time they incur overdraft fees and charges. Most consumers initially discover overdraft fees after-the-fact, typically through mailed account records or online banking.

## FACTS CONCERNING THE CLASS REPRESENTATIVE

53.    Plaintiff Scott got a new JPMCB personal checking account in or about October 2009. Plaintiff Scott also held a consumer credit card account with CBUSA during the relevant period.

54.    Plaintiff Scott's Deposit Account Agreement with JPMCB states, "You must separately sign up for Overdraft Protection as it does not automatically apply to new accounts." In fact, Plaintiff Scott never enrolled or consented to Chase's Overdraft Protection service. Despite this, Chase unilaterally enrolled Plaintiff Scott in Overdraft Protection and unilaterally designated her CBUSA consumer credit card account as the funding account for the Overdraft Protection service without her authorization.

55.     Plaintiff Scott's Cardmember Agreement for her CBUSA credit card states an Overdraft Advance APR that fails to accurately disclose the total cost of borrowing for ODP Transfers because it fails to account for JPMCB's Transfer Fees.

56.     On February 3, 2010, Plaintiff Scott withdrew $213.65 from her personal checking account despite having a balance of $118.50. Plaintiff Scott's withdrawal resulted in a $95.15 overdraft, causing a costly triple-whammy: a $10.00 Transfer Fee, a $150.00 ODP Transfer charge, and monthly recurring Overdraft Interest Charges, which amounted to $4.35 in February 2010.

57.     Thereafter, on September 15, 2010, Plaintiff Scott withdrew $1,937.00 from her personal checking account despite having a balance of $1,936.74. Plaintiff Scott's withdrawal resulted in a $0.26 overdraft, causing a $50.00 ODP Transfer charge on her credit card and monthly recurring Overdraft Interest Charges by CBUSA.

58.     The overdraft fees and charges to Plaintiff Scott's accounts were completely avoidable, and Plaintiff Scott would not have completed the withdrawals at issue had Chase notified her on February 3 and September 15 that her withdrawals would trigger an overdraft.

59.     Until or about September 2012, Plaintiff Scott carried an Overdraft Advance balance on her CBUSA credit card at an Overdraft Advance APR of 26.24%, which is higher than the standard Purchase APR of 24.24%. The stated Overdraft Advance APR, however, was lower than the effective APR for the overdraft transactions because it failed to account for the Transfer Fee that was charged to Plaintiff Scott's checking account. Thus, CBUSA continued to levy unauthorized and misleading Overdraft Interest Charges each month until in or about September 2012, when Plaintiff Scott paid off the entire balance on her credit card account.

## CLASS REPRESENTATION ALLEGATIONS

60.     Plaintiff seeks to represent a class defined as all persons in the United States who were charged monies associated with Chase's Overdraft Protection service, including but not limited to the Transfer Fee, ODP Transfer charges, and Overdraft Interest Charges, for whom Chase has no record confirming such person's authorization to be enrolled for Chase's Overdraft Protection service.

61.     Plaintiff also seeks to represent a subclass of all Class members who were charged monies associated with Chase's Overdraft Protection service in California (the "Subclass").

62.     Members of the Class and Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and Subclass number in the tens of thousands.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class and Subclass members may be notified of the pendency of this action by mail and/or publication through the customer records of Defendants.

63.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to whether consumers were charged unauthorized and unconscionable fees and charges associated with Chase's Overdraft Protection service, whether Chase breached the terms of its Deposit Account Agreements and funding account agreements with respect to its Overdraft Protection service, and whether Chase's marketing and promotion of its Overdraft Protection service is false and misleading.

64.    The claims of the named Plaintiff are typical of the claims of the Class and Subclass in that the named Plaintiff was charged unauthorized and unconscionable fees and charges associated with Chase's Overdraft Protection service.

65.    Plaintiff is an adequate representative of the Class and Subclass because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

66.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class and Subclass members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### Violation Of The Electronic Funds Transfer Act And Regulation E

67.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

68.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against all Defendants.

69.    The Electronic Funds Transfer Act ("EFTA") provides a basic framework establishing the rights, liabilities, and responsibilities of participants in an electronic fund transfer system. 15 U.S.C. § 1693. The primary objective of the EFTA "is the provision of individual consumer rights." *Id.*

70.    Plaintiff and Class and Subclass members each maintained "accounts" as that term is defined in 15 U.S.C. § 1693a(2), and are "consumers" as that term is defined in 15 U.S.C. § 1693a(5).

71.    An "electronic fund transfer" is "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone." 15 U.S.C. § 1693a(7). Accordingly, Plaintiff Scott's overdraft transactions, discussed *supra*, qualify as electronic fund transfers.

72.    Chase engaged in "unauthorized electronic funds transfers," as that term is defined in 15 U.S.C. § 1693a(11), by charging overdraft Transfer Fees against Plaintiff's personal checking account without her authorization, and by charging Overdraft Interest Charges against Plaintiff's consumer credit card account without her authorization and at an Overdraft Advance APR that is artificially lower than the total cost of borrowing for ODP Transfers because it fails to account for the Transfer Fee charged to Plaintiff's checking account.

73.    The EFTA provides that "[t]he terms and conditions of electronic fund transfers involving a consumer's account shall be disclosed at the time the consumer contracts for an electronic fund transfer service, in accordance with regulations of the Bureau." 15 U.S.C. § 1693c(a).  Such disclosure shall include "the consumer's liability for unauthorized electronic fund transfers," "the type and nature of electronic fund transfers which the consumer may initiate," "any charges for electronic fund transfers," and "the consumer's right to receive documentation of electronic fund transfers." *Id.*  Additionally, "A financial institution shall notify a consumer in writing at least twenty-one days prior to the effective date of any change in any term or condition of the consumer's account ... if such change would result in greater cost or liability for such consumer..." 15 U.S.C. § 1693c(b).  As discussed, *supra*, Defendants did not make these required disclosures and notifications.  In fact, Defendants did not disclose the actual amount of the Transfer Fee in JPMCB's Deposit Account Agreement, and CBUSA's Cardmember Agreement disclosed artificially low financing charges for ODP Transfers.

74.    The EFTA also provides that "the financial institution holding such consumer's account shall, directly or indirectly, at the time the transfer is initiated, make available to the consumer written documentation of such transfer." 15 U.S.C. § 1693d(a).  This documentation must include "the amount involved and date the transfer is initiated," "the type of transfer," "the identity of the consumer's account with the financial institution from which or to which funds are transferred," "the identity of any third party to whom or from whom funds are transferred," and "the location or identification of the electronic terminal involved."  However, when Plaintiff and members of the Class and Subclass made ATM and other debit transactions that resulted in an overdraft, Chase did not disclose at the time of the transactions that it would assess overdraft

fees and charges, as required by the EFTA. In fact, Plaintiff Scott only learned about her overdraft transactions after-the-fact.

75.     Furthermore, Chase's lack of disclosure violates Regulation E, the EFTA's implementing regulations. *See* 12 C.F.R. § 205.7 and 12 C.F.R. § 205.9.

76.     Regulation E provides that, "A financial institution shall make the disclosures required by this section at the time a consumer contracts for an electronic fund transfer service or before the first electronic fund transfer is made involving the consumer's account." 12 C.F.R. § 205.7(a). These disclosures shall include "[a]ny fees imposed by the financial institution for electronic fund transfers or for the right to make transfers" and "[a] notice that a fee may be imposed by an automated teller machine operator … when the consumer initiates an electronic fund transfer…" 12 C.F.R. § 205.7(b)(7), (11). Additionally, "[i]f an electronic fund transfer service is added to a consumer's account and is subject to terms and conditions different from those described in the initial disclosures, disclosures for the new service are required." As discussed, *supra*, Defendants did not make these required disclosures and notifications.

77.     Regulation E also requires a financial institution to provide an accurate receipt at the point of sale, including total cost and any fees associated with the transaction. 12 C.F.R. § 205.9. Terminal receipts also must be readily understandable and accurate regarding the amount of the transfer: "[A] financial institution shall make a receipt available to a consumer at the time the consumer initiates an electronic fund transfer at an electronic terminal. The receipt shall set forth the following information, as applicable: (1) Amount. The amount of the transfer. A transaction fee may be included in this amount, provided the amount of the fee is disclosed on the receipt and displayed on or at the terminal." 12 C.F.R. § 205.9. However, Defendants do not disclose their overdraft fees and charges "at the time the consumer initiates an electronic fund

transfer." These fees are "transaction fees" that must be "disclosed on the receipt and displayed on or at the terminal," per Regulation E.

78.    Plaintiff would not have made certain debit card purchases or ATM withdrawals had Chase properly disclosed the fees it would charge.

79.    These violations were of a continuing nature because Chase levied Overdraft Interest Charges against Plaintiff Scott every month until in or about September 2012, when she paid off the balance of her CBUSA credit card in full. Defendants' Overdraft Interest Charges are unauthorized transfers, and Plaintiff Scott was injured each time Defendants billed her credit card.

80.    Plaintiff asserts a claim based on Regulation E, including 12 C.F.R. § 205.7 and 12 C.F.R. § 205.9, and the Electronic Funds Transfer Act, including 15 U.S.C. § 1693c and 15 U.S.C. § 1693d.

81.    Under 15 U.S.C. § 1693m, Plaintiff and Class members seek damages, statutory damages, costs of suit, including reasonable attorneys' fees, and such other further relief as the Court deems appropriate.

## COUNT II

## Violation Of The Racketeering Influenced and Corrupt Organizations Act ("RICO")

82.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

83.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against JPMC.

84.    The Racketeering Influenced and Corrupt Organizations Act ("RICO") provides:

> It shall be unlawful for any persons employed by or associated
> with any enterprise engaged in, or the activities of which affect,

interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. 18 U.S.C. § 1962(c).

85.    JPMC is at all times relevant to this action, a RICO "person" within the meaning of 18 U.S.C. § 1961(3) and § 1962(c), and employs or associates with an enterprise operated or managed through a pattern of racketeering activity that injured Plaintiff's and the Class members' property.

## RICO Enterprise

86.    JPMCB and CBUSA are an enterprise engaged in activities that affect every state within the United States.  Alternatively, JPMCB and CBUSA are an association-in-fact "enterprise," within the meaning of 18 U.S.C. § 1961(4), and engaged in activities that affect every state within the United States.

87.    The enterprise's purpose is to profit from making unauthorized charges to consumers' credit cards, saving accounts, home equity lines of credit, prestige lines of credit, and checking accounts under the guise that consumers authorized their enrollment in Overdraft Protection.

88.    JPMCB and CBUSA's role in the enterprise is (a) to create, implement, operate, market, promote and advertise the Overdraft Protection service; (b) to enroll customers in Overdraft Protection without their authorization; (c) to process customer initiated transactions that would result in an overdraft; and (d) to levy fees and charges associated with its Overdraft Protection service each time a consumer overdrafts his account.

89.    The enterprise has remained in existence long enough for Defendants to pursue and accomplish the enterprise's purpose:  to profit from unauthorized, unconscionable and

misleading fees and charges to consumers' Chase credit cards, saving accounts, home equity lines of credit, prestige lines of credit, and checking accounts.

### Enterprise's Operation Or Management

90.    JPMC operates and manages the enterprise.

### The Pattern

91.    JPMC engages in a related pattern of unlawful activity because, among other things, (a) JPMC's purpose is to defraud consumers by levying fees and charges against their credit cards, saving accounts, home equity lines of credit, prestige lines of credit, and checking accounts, without proper authorization or disclosure, under the guise that consumers enrolled in Chase's Overdraft Protection service; (b) JPMC enrolls consumers in Overdraft Protection without their authorization; (c) JPMC processes customer initiated transactions that would result in an overdraft; and (d) JPMC levies unauthorized, unconscionable and misleading fees and charges associated with its Overdraft Protection service each time a consumer overdrafts his or her checking account.  JPMC will continue to charge consumers' credit and checking accounts unauthorized fees associated with Overdraft Protection indefinitely.

### Racketeering Activity

92.    JPMC engaged in racketeering activity via mail and wire fraud within the meaning of 18 U.S.C. §§ 1341, 1343, by using the Internet and U.S. mail to advance its scheme to profit from unauthorized charges to consumers' credit cards, saving accounts, home equity lines of credit, prestige lines of credit, and checking accounts.  JPMC used the Internet and U.S. mail to misrepresent to consumers the true nature of its Overdraft Protection service.

93.    JPMC further engaged in racketeering activity via financial institution fraud within the meaning of 18 U.S.C. § 1344, by knowingly executing a scheme to obtain monies

from consumers' credit and checking accounts by charging unauthorized, unconscionable and misleading fees and charges associated with its Overdraft Protection service, under the pretext that consumers agreed to sign up and pay such fees and charges.

94.     Plaintiff and Class and Subclass members were injured from the unauthorized fees and charges to their credit and checking accounts, and thus suffered damages, including lost money, interest and use of their money.  Plaintiff and Class and Subclass members are entitled to treble damages and attorneys' fees and costs under 18 U.S.C. § 1964(c).

## COUNT III

### Breach Of Contract

95.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

96.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against defendants JPMCB and CBUSA.

97.     As discussed above, Plaintiff and Class and Subclass members entered into a legally binding contract with JPMCB when they opened their checking accounts, governed by the Deposit Account Agreement, and their funding accounts, governed by the funding account agreements (in Plaintiff's case, her Cardmember Agreement).

98.     The Deposit Account Agreement states, "You must separately sign up for Overdraft Protection as it does not automatically apply to new accounts."

99.     Plaintiff's Cardmember Agreement and defendants' other funding account agreements state a defined percentage range for Overdraft Advance APR that do not account for Transfer Fees charged to checking accounts for overdraft transactions.

100.    Plaintiff and Class and Subclass members have performed all of their duties and obligations under the Deposit Account Agreement, Cardmember Agreement and other funding account agreements, except those excused by Chase's nonperformance.

101.    JPMCB and CBUSA materially breached the aforementioned contracts by unilaterally enrolling Plaintiff and Class and Subclass members in Chase's Overdraft Protection service with their authorization, and by charging Plaintiff and Class and Subclass members unauthorized, unconscionable and misleading fees and charges associated with its Overdraft Protection service, including but not limited to Transfer Fees, ODP Transfer charges, and Overdraft Interest Charges.

102.    As a direct and proximate result of JPMCB's and CBUSA's breaches of contract, Plaintiff and Class and Subclass members have and will continue to suffer damages.

## COUNT IV

### Breach Of The Implied Covenant Of Good Faith And Fair Dealing

103.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

104.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against defendants JPMCB and CBUSA.

105.    The contracts between JPMCB, CBUSA and Plaintiff imposed on each party a duty of good faith and fair dealing in the performance of the Deposit Account Agreement and funding account agreements.

106.    JPMCB and CBUSA breached their duty of good faith and fair dealing by intentionally, purposefully, and/or negligently unilaterally enrolling Plaintiff and Class and Subclass members in Chase's Overdraft Protection service with their authorization, and by

charging Plaintiff and Class and Subclass members unauthorized, unconscionable and misleading fees and charges associated with its Overdraft Protection service, including but not limited to Transfer Fees, ODP Transfer charges, and Overdraft Interest Charges.

107.    JPMCB's and CBUSA's conduct was conscious, deliberate, and unfairly frustrated the agreed purpose of the parties in carrying out the Deposit Account Agreement and Cardmember Agreement.

108.    JPMCB's and CBUSA's conduct disappointed the reasonable expectations of Plaintiff and the Class and Subclass members, thereby depriving them of the benefits of their bargain.

109.    As a direct and proximate result of JPMCB's and CBUSA's breach of good faith and fair dealing, Plaintiff and the Class and Subclass members have and will continue to suffer damages.

### COUNT V

### Conversion

110.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

111.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against all Defendants.

112.    Defendants have and continue to have a duty to maintain and preserve customers' credit cards, saving accounts, home equity lines of credit, prestige lines of credit, and checking accounts, and to prevent their diminishment or alteration through their own wrongful acts.

113.    Defendants wrongfully and intentionally collected fees and charges associated with their Overdraft Protection service, including the unauthorized, unconscionable and misleading fees and charges to Plaintiff's checking account and credit card.

114.    Defendants collected these fees and charges by wrongfully and intentionally enrolling Plaintiff and members of the Class and Subclass in their Overdraft Protection service without prior authorization and by failing to accurately disclose the terms of such fees and charges.

115.    Defendants have assumed and exercised the right of ownership over these funds without authorization to do so and in hostility to the rights of Plaintiff and members of the Class and Subclass without legal justification.

116.    Defendants have retained these funds unlawfully without the consent of Plaintiff and members of the Class and Subclass and have deprived them from exercising control over the funds.

117.    Defendants intend to permanently deprive Plaintiff and members of the Class and Subclass of these funds.

118.    Plaintiff and members of the Class and Subclass properly own these funds, not Defendants, who now claim that they are entitled to ownership of the funds contrary to the rights of Plaintiff and members of the Class and Subclass.

119.    Plaintiff and members of the Class and Subclass are entitled to the immediate possession of these funds.

120.    Defendants have wrongfully converted these specific and readily identifiable funds.

121.    Defendants' wrongful conduct is of a continuing nature.

122.    As a direct and proximate result of Defendants' wrongful conversion, Plaintiff and members of the Class and Subclass have suffered and continue to suffer damages. They are entitled to recover from Defendants all damages and costs permitted, including all amounts that Defendants wrongfully converted, which are specific and readily identifiable.

## COUNT VI

### Consumers Legal Remedies Act ("CLRA"), Calif. Civil Code §§ 1750, *et seq.*

123.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

124.    Plaintiff brings this claim individually and on behalf of the members of the proposed Subclass against all Defendants.

125.    CLRA § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

126.    CLRA § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

127.    CLRA § 1770(a)(14) prohibits "[r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law."

128.    CLRA § 1770(a)(16) prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not."

129.    Chase violated these provisions by intentionally, purposefully, and/or negligently charging unauthorized, unconscionable and misleading fees and charges associated with its

Overdraft Protection service, including but not limited to Transfer Fees, ODP Transfer charges, and Overdraft Interest Charges.

130.    On January 29, 2013, a CLRA notice letter was served on Defendants JPMC, CBUSA and JPMCB that complied in all respects with California Civil Code § 1782(a). Plaintiff, by and through her counsel, sent her letter *via* certified mail, return receipt requested, advising Defendants they were in violation of the CLRA and must correct, repair, replace, or otherwise rectify the services alleged to be in violation of § 1770. A true and correct copy of Plaintiff's letter is attached hereto as Exhibit A.

131.    Wherefore, Plaintiff hereby seeks injunctive relief for this violation of the CLRA against all Defendants. Within thirty days of the filing hereof, Plaintiff shall amend this Complaint to include damages claims under the CLRA against all Defendants.

## COUNT VII

### Unfair Competition Law, Calif. Bus. & Prof. Code §§ 17200, *et seq.*

132.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

133.    Plaintiff brings this claim individually and on behalf of the members of the proposed Subclass against all Defendants.

134.    Chase is subject to the Unfair Competition Law ("UCL"), Calif. Bus. & Prof. Code §§ 17200, *et seq.* The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising ...."

135.    Chase's conduct, described herein, violated the "unlawful" prong of the UCL by violating the EFTA, RICO, CLRA, and FAL (see *infra* at Counts I, II, VI, and VIII).

136.    Chase's conduct, described herein, violated the "unfair" prong of the UCL by creating harm to Plaintiff and members of the Subclass that outweighs the utility, if any, of those business practices.

137.    Chase's conduct, described herein, violated the "fraudulent" prong of the UCL by misrepresenting that, "You must separately sign up for Overdraft Protection as it does not automatically apply to new accounts[,]" and by understating the borrowing costs for ODP Transfers in the funding account agreements.

138.    Plaintiff and Subclass members suffered lost money or property as a result of Chase's UCL violations, including but not limited to Transfer Fees, ODP Transfer charges, and Overdraft Interest Charges.

## COUNT VIII

### False Advertising Law ("FAL"), Calif. Bus. & Prof. Code §§ 17500, *et seq.*

139.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

140.    Plaintiff brings this claim individually and on behalf of the members of the proposed Subclass against all Defendants.

141.    California's False Advertising Law, Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

32

142.    Chase committed acts of false advertising, as defined by §§ 17500, *et seq.*, by misrepresenting that, "You must separately sign up for Overdraft Protection as it does not automatically apply to new accounts." Chase knew or should have known, through the exercise of reasonable care, that this statement was untrue and misleading.

143.    Chase's actions in violation of §§ 17500, *et seq.*, were false and misleading such that the general public is and was likely to be deceived.

144.    Plaintiff and Subclass members suffered lost money or property as a result of Defendants' FAL violations, including but not limited to Transfer Fees, ODP Transfer charges, and Overdraft Interest Charges.

## COUNT IX

### Unjust Enrichment

145.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

146.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against all Defendants.

147.    Plaintiff and Class members conferred benefits on Chase by paying Overdraft Protection fees and charges, including but not limited to Transfer Fees, ODP Transfer charges, and Overdraft Interest Charges.

148.    Chase has been unjustly enriched in retaining the revenues derived from unauthorized charges associated with Chase's Overdraft Protection service. Retention of those monies under these circumstances is unjust and inequitable because Chase misrepresented that, "You must separately sign up for Overdraft Protection as it does not automatically apply to new

accounts[,]" and understated the borrowing costs for ODP Transfers in the funding account agreements.

149.    Because Chase's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Chase must pay restitution to Plaintiff and Class members for its unjust enrichment, as ordered by the Court.

## COUNT X

### Negligent Misrepresentation

150.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

151.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against all Defendants.

152.    As discussed above, Chase provided Plaintiff and the Class and Subclass members with false or misleading material information and failed to disclose material facts about its Overdraft Protection service.

153.    At an absolute minimum, Chase negligently misrepresented and/or negligently omitted material facts about its Overdraft Protection service, including but not limited to statements that, "You must separately sign up for Overdraft Protection as it does not automatically apply to new accounts[,]" omissions about the total borrowing costs for ODP Transfers, and omissions about the amount of overdraft related fees and charges.

154.    The negligent misrepresentations and omissions made by Chase, upon which Plaintiff and the Class and Subclass members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and the Class and Subclass members to incur unauthorized, unconscionable and misleading fees and charges associated with the Overdraft Protection

34

service, including but not limited to Transfer Fees, ODP Transfer charges, and Overdraft Interest Charges.

155.    The negligent actions of Chase caused damage to Plaintiff and the Class and Subclass members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT XI

### Fraud

156.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

157.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against all Defendants.

158.    As discussed above, Chase provided Plaintiff and the Class and Subclass members with false or misleading material information and failed to disclose material facts about its Overdraft Protection service, including but not limited to statements that, "You must separately sign up for Overdraft Protection as it does not automatically apply to new accounts[,]" and by understating the borrowing costs for ODP Transfers in the funding account agreements.

159.    The negligent misrepresentations and omissions made by Chase, upon which Plaintiff and the Class and Subclass members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and the Class and Subclass members to incur unauthorized, unconscionable and misleading fees and charges associated with the Overdraft Protection service, including but not limited to Transfer Fees, ODP Transfer charges, and Overdraft Interest Charges.

160.    The fraudulent actions of Chase caused damage to Plaintiff and the Class and Subclass members, who are entitled to damages and other legal and equitable relief as a result.

35

## **RELIEF DEMANDED**

161.    WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

A.    For an order certifying the nationwide Class and Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

B.    For an order declaring the Defendants' conduct violates the statutes referenced herein;

C.    For an order finding in favor of Plaintiff, the nationwide Class, and the Subclass on all counts asserted herein;

D.    For compensatory, statutory and punitive damages in amounts to be determined by the Court and/or jury;

E.    For prejudgment interest on all amounts awarded;

F.    For an order of restitution and all other forms of equitable monetary relief;

G.    For injunctive relief as pleaded or as the Court may deem proper; and

H.    For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

**JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action and issues so triable.


Dated: January 29, 2013

Respectfully submitted,

BURSOR & FISHER, P.A.


By: _____
             Joseph I. Marchese

Scott A. Bursor (SB1141)
Joseph I. Marchese (JM1976)
Neal J. Deckant (ND1984)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
Email: scott@bursor.com
          jmarchese@bursor.com
          ndeckant@bursor.com

*Attorneys for Plaintiff*

I, Laurie Scott, declare as follows:

1.     I am a plaintiff in this action and a citizen of the State of California. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.     The complaint filed in this action is filed in the proper place for trial under California Civil Code Section 1780(d) in that Defendants conduct a substantial amount of business in this District. While living in California, I held a consumer checking account with JPMorgan Chase Bank, N.A. ("Chase"). On September 15, 2010, I was charged fees associated with Chase's Overdraft Protection service in Petaluma, California.

3.     I did not enroll in Chase's Overdraft Protection.

4.     Defendants misrepresented in their Account Rules and Regulations that, "You must separately sign up for Overdraft Protection as it does not automatically apply to new accounts."

5.     But for Defendants' misrepresentations, I would not have incurred fees associated with Chase's Overdraft Protection service.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on November _16_, 2012 at _Two Rock_, California.


LAURIE SCOTT

**EXHIBIT A**

# BURSOR & FISHER
P.A.

888 SEVENTH AVENUE
NEW YORK, NY 10019
www.bursor.com

JOSEPH I. MARCHESE
Tel: 646-837-7410
Fax: 212-989-9163
jmarchese@bursor.com

January 29, 2013

*Via Certified Mail - Return Receipt Requested*

JPMorgan Chase & Co.
Attn: Legal Department
270 Park Avenue
New York, NY 10017

JPMorgan Chase Bank, N.A.
Attn: Legal Department
1111 Polaris Parkway
Columbus, OH 43240

Chase Bank USA, N.A.
Attn: Legal Department
200 White Clay Center Drive
Newark, DE 19711

Re:   *Notice Letter Pursuant to California Civil Code § 1782*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by JPMorgan Chase & Co. ("JPMC"), JPMorgan Chase Bank, N.A. ("JPMCB"), and Chase Bank USA, N.A. ("CBUSA") (collectively, "Chase") pursuant to California Civil Code § 1782 on behalf of our client, Laurie Scott, and all other persons similarly situated.

This notice concerns the Overdraft Protection service offered by Chase.  JPMCB's Deposit Account Agreement provides that customers "must separately sign up for Overdraft Protection as it does not automatically apply to new accounts."  But this is false and misleading because Chase unilaterally enrolls new customers into the Overdraft Protection service without their authorization, and subsequently levies unauthorized related fees and charges to customers' checking and funding accounts, including consumer credit card accounts.

Ms. Scott holds a JPMCB checking account and a CBUSA credit card that was unilaterally linked to her checking account by Chase.  Ms. Scott did not sign up for Chase's

Overdraft Protection service, but was enrolled without her authorization or consent. On February 3, 2010, Ms. Scott made a withdrawal on her checking account that resulted in a $95.15 overdraft. The withdrawal caused an unauthorized $150.00 overdraft protection transfer ("ODP Transfer") to her JPMCB checking account, a $10.00 ODP Transfer Fee to her checking account, and recurring monthly Overdraft Interest Charges on her CBUSA credit card.

On September 15, 2010, Ms. Scott made another withdrawal on her checking account that resulted in a $0.26 overdraft. This withdrawal caused an unauthorized $50.00 ODP Transfer to her JPMCB checking account and recurring monthly Overdraft Interest Charges on her CBUSA credit card.

By misrepresenting the terms of the Overdraft Protection service and by charging unauthorized ODP Transfer Fees and Overdraft Interest Charges, Chase violated numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (9), (14), and (16).

We hereby demand that Chase immediately (1) cease and desist from levying ODP Transfer Fees and Overdraft Protection Charges without first obtaining the account holder's affirmative consent; and (2) make full restitution to all Chase personal checking and consumer credit card account holders, who have not signed up for the Overdraft Protection service, of all money and interest charges obtained from that service.

We also demand that Chase preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning its Overdraft Protection service, JPMCB's ODP Transfer Fees, and CBUSA's Overdraft Interest Charges;

2. All communications with holders of JPMCB personal checking accounts and CBUSA consumer credit card accounts concerning the Overdraft Protection service, JPMCB's ODP Transfer Fees, and CBUSA's Overdraft Interest Charges;

3. All communications with the Office of the Comptroller of the Currency, or any other banking regulator, concerning the Overdraft Protection service, JPMCB's ODP Transfer Fees, and CBUSA's Overdraft Interest Charges;

4. All documents concerning the advertisement, marketing, and/or sale of Chase personal checking and consumer credit card accounts; and

5. All communications with customers concerning complaints or comments concerning the Overdraft Protection service, the marketing thereof, and all overdraft related fees and charges.

If Chase contends that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Very truly yours,

Joseph I. Marchese